### Town of Sheldon *v.* Town of Fairfax.

Corporations incur the same liabilities for their acts as natural persons; and when duties are imposed upon them by law, or benefits conferred at their request, the law, equally as in the case of individuals, implies an obligation to perform the duty, and to make remuneration for the benefit.

When one party sustains an injury by the culpable misconduct, or negligence, of another, the party injured may recover compensation for it by an action on the case.

Where several towns, including the towns of S. and F., entered into a mutual arrangement for supporting together their respective paupers upon a farm purchased by them for that purpose in the town of S., and, during the continuance of the arrangement, the town of F. sent to the farm, to be supported there, a pauper, with his family, who had become legally chargeable to F., but who had no legal settlement in the state, and the towns subsequently, by mutual consent, terminated the arrangement between them, and the town of F. wholly neglected to remove from S. the paupers so sent by them to S., and the paupers remained in S. after the termination of the arrangement, and were supported by that town, it was held, that S. might recover against F., for the expenses so incurred, by an action of trespass on the case.

And it was held, that this case differed from the cases of *Aldrich* v. *Londonderry,* 5 Vt. 441, and *Castleton* v. *Miner et al.,* 8 Vt. 209, in this material respect, that whereas in those cases the individuals claiming to recover from the towns were under no obligation to have supported the paupers, in this case, the town of S. was obliged, by statute, to support the paupers, who were within their limits and in need of relief.

And it was also held, that the case of *Putney* v. *Dummerston*, 12 Vt. 370, was not an authority against the plaintiffs in this case, for the reason, that it could not be supposed, that the court intended to decide, that the plaintiffs in that case were without remedy, but that the proper remedy, as the law then stood, when an order of removal was reversed, was, as under the English statute, for two justices to make a special order, reciting the proceedings, for the return of the pauper to the place from which he had been sent. [But this matter is now provided for by statute. Rev. St. c. 16, sec. 10.]

TRESPASS ON THE CASE for the neglect of the defendants to remove certain paupers from the town of Sheldon, whereby it was alleged, that Sheldon had been obliged to incur expenses for their support. Plea, the general issue, and trial by the court, upon a case stated, April Term, 1848,—ROYCE, Ch. J., presiding. The facts agreed upon were as follows.

In 1834 the towns of St. Albans, Swanton, Highgate, Sheldon, Fairfield and Franklin entered into a mutual arrangement for the purpose of supporting their respective paupers; and for that purpose they purchased a farm in Sheldon, to which they removed such of their paupers as they chose. The expense of the purchase of the farm and of the support of the paupers thereon was defrayed by money raised by the several towns upon their respective grand lists, —each town contributing in proportion to its grand list, and not in proportion to the number of paupers sent by it to the farm, to be there supported. In 1836 the town of Fairfax united with the other towns in their arrangement, being admitted upon the same terms, and with the same rights and liabilities, with those towns. This arrangement was continued until 1845, when, by mutual consent, it was agreed by the several towns, that the arrangement should cease on the first day of April, 1846; and it was in fact terminated on that day. In September, 1837, which was during the existence of this arrangement, a foreigner, by the name of John Mark, who had been but a short time in this country, came to Fairfax, with his wife, Mary Mark, and several children, and soon after made application to the overseer of the poor of Fairfax for assistance. Upon examination the overseer found, that Mark and his family were poor, and in need of relief; and he directed them to go to the poor house at Sheldon,—which they did. A portion of Mark's family remained at the poor house, and, at the time of the termination of the arrangement between the

Sheldon *v.* Fairfax.

several towns, April 1, 1846, Mary Mark, then a widow, and two of her children, who had been born at the poor house, were still remaining there. The overseer of the poor of Fairfax did not, on the first day of April, 1846, remove the said paupers from Sheldon, nor did he then, or ever afterwards, make any provision for their support; but the town of Sheldon maintained them after that time.

It was agreed, that if, upon these facts, the plaintiffs were entitled to recover, against Fairfax, for the support of these paupers subsequent to April 1, 1846, judgment should be rendered for the plaintiffs for $17,00 damages, and their costs; and that otherwise judgment should be rendered for the defendants, for their costs.

The county court rendered judgment for the plaintiffs. Exceptions by defendants.

*A. Soule* and *H. E. Hubbell* for defendants.

At common law no action can be sustained against a town for the support of their paupers. *Middlebury* v. *Hubbardton*, 1 D. Ch. 205. The obligation of a town to support their poor arises from the statute alone. *Aldrich* v. *Londonderry*, 5 Vt. 441. *Castleton* v. *Miner et al.*, 8 Vt. 209. No case will be held by the court to come within the reason and spirit of the statute unless it come within its terms. *Manchester* v. *Dorset*, 14 Vt. 224. A town cannot be compelled to pay for the necessary support of an acknowledged pauper, unless by virtue of an express contract with them in their corporate capacity. *Castleton* v. *Miner et al.*, 8 Vt. 209.

*B. Hall, A. Burt* and *A. O. Aldis* for plaintiffs.

Although no express promise was made by Fairfax to remove the paupers in question from Sheldon upon the termination of the arrangement stated in the case, yet the facts are sufficient to raise an implied promise to that effect;—otherwise Sheldon is without remedy. Corporations, when acting within the legitimate objects of their creation, incur the same liabilities from their acts, that natural persons would incur. Consequently, while thus acting, all duties imposed by law and all benefits conferred at their request raise implied promises, for the enforcement of which an action will lie. 2 Kent 289. *Hayden* v. *Mid. Turnp. Co.*, 10 Mass. 397. *Dunn* v. *St. Andrew's Church*, 14 Johns. 118. *Poultney* v. *Wells*, 1 Aik.

180. Fairfax, by the arrangement, acquired the right to send the paupers to Sheldon for support; and Sheldon could in no way prevent it; and we insist, that the law imposed on Fairfax a corresponding obligation to remove them upon the termination of the arrangement. In all the cases decided in this state, in which towns have been held not liable for assistance afforded to their paupers, there was not only no express promise on the part of the town, but no *acts*, whatever, from which to infer a promise. The assistance was either voluntarily bestowed by the individual seeking to recover therefor,—as in *Aldrich* v. *Londonderry*, 5 Vt. 441, and *Houghton* v. *Danville*, 10 Vt. 537,—or the pauper had wandered into the town affording the relief, without any agency of the town in which he had his settlement,—as in *Middlebury* v. *Hubbardton*, 1 D. Ch. 205. But in the present case the paupers were sent to Sheldon by Fairfax, and Fairfax was bound to remove them; and the omission to remove them was negligence, for which the town is liable, as much as for a direct misfeasance. Sheldon could not remove the paupers, nor avoid the expense of their support; and case is the appropriate remedy to recover for the injury. *Hyde* v. *Moffat*, 16 Vt. 271.

*The opinion of the court was delivered by*

HALL, J. The pauper, not having a legal settlement in Fairfax, cannot be removed there by Sheldon; and unless this action can be sustained, the plaintiff town is without remedy, not only for the past support of the paupers, but for their maintenance, so long as they may be in need of relief.

It is *well settled* at the present day, however the law may have been formerly understood, that corporations incur the same liabilities for their acts as natural persons; and that, where duties are imposed on them by law, or benefits conferred at their request, the law, equally as in the case of individuals, implies an obligation to perform the duty and to make remuneration for the benefit. It is obvious, that, but for the contract between the two towns for the temporary support of the pauper within the limits of Sheldon, the pauper would not now be chargeable to Sheldon, but would be chargeable to Fairfax. This change of the burden of maintaining the pauper was not the original object or intent of the parties. It

14

could not have been contemplated by either of the towns, at the time the pauper was sent to Sheldon, that, by any magical operation of the contract between them, the liability for the future support of the pauper was to be transferred from one town to the other. The duty of the town of Fairfax to take the pauper away, when the temporary purpose, for which he was sent, was accomplished, is necessarily implied from the contract between the two towns; and the town of Sheldon, having suffered injury by the breach of that duty, is entitled to compensation. I apprehend there is no doubt, but that, upon acknowledged legal principles, the plaintiffs' claim is well sustained. It rests on the common doctrine, that, when one party sustains an injury by the culpable misconduct, or negligence, of another, the party injured may recover compensation for it by an action on the case. 2 Steph. N. P. 1006–1008, and cases cited.

It is said, however, in behalf of the defendant town, that, by repeated decisions in this state, no action can be maintained against a town for the support of a pauper, unless it be founded on some specific statute provision, or an express contract; and that this action, not being founded on either, cannot be maintained. The cases in this state have indeed gone great lengths in excusing towns from liability; but none of them have gone quite the length, which we must go, to defeat this action.

In *Aldrich* v. *Londonderry* and *Castleton* v. *Miner*, cited in behalf of the defendants, it was held, that the statute duty of a town to support its paupers did not impose a liability, which could be enforced by action in favor of an individual furnishing the support, and that an express request was necessary, to render a town liable to such action. In both cases it was attempted to sustain the claims of the individuals by showing that the paupers had been supported by them the previous years, and that the towns had neglected to take them away. But the court held, that the neglect of the towns to take away the paupers imposed no obligation on the individuals to support them; and that the individuals could not become creditors of the towns by voluntary contribution. In the present case, the paupers being in the plaintiff town and needing relief, it was the statute duty of the town to furnish it. Rev. St., ch. 16, sec. 3. There was no such escape for the towns, as there was said to be for the plaintiff in *Aldrich* v. *Londonderry*, by turning the pauper out of

doors. This legal duty to furnish the support in the first instance forms an important distinction between those cases and the present, and renders them of no weight as authorities against the maintenance of this action.

Nor are the cases, in which it has been held, that there is no common law obligation upon towns to maintain their poor, such authority; because the claim in this case does not rest upon any supposed original obligation in one town to pay another for the support of its paupers; but upon the misconduct of the defendant town, in the management of its paupers, by which a burden, that belonged to the defendants, has been improperly and unjustly cast upon the plaintiffs. If the town of Fairfax had been passive, had done nothing to the injury of Sheldon, then those cases would apply, and there could be no ground for sustaining the action.

The case which bears the nearest resemblance to the present, and with which we have had the greatest difficulty, is that of *Putney* v. *Dummerston*, 13 Vt. 370. In that case a pauper, who had come to reside in Dummerston, but had no legal settlement there, was removed to Putney, under an order of two justices, which had been appealed from and reversed. The pauper, being left in Putney under such order, was supported by that town; and it was held, that Putney could not maintain assumpsit against Dummerston for such support. It is impossible to believe, that the court could have intended to hold, that Putney was without remedy for such a palpable act of injustice on the part of Dummerston, and thereby to declare to the several towns in the state, that a convenient way of getting rid of the support of their resident paupers, who had no legal settlement, was to remove them to some other town and suffer the order of removal to be quashed, or reversed, on appeal. The court must have understood, that Putney had some other remedy, and that there was no necessity for resorting to an action upon an implied contract of the defendant town. And on referring to the English authorities, under a statute similar to ours, it would seem, that, under such circumstances, two justices might, *in execution of the order of reversal*, and as incident to it, make an order, *setting forth the matter specially*, for the return of the pauper to the place from which he had been sent. Comb. 401. 3 Burn's Justice 683. *Inh. of Chalbury* v. *Chipping Farrington*, 2 Salk. 488. *Overseers of Pitts-*

*town* v. *Overseers of Plattsburg*, 18 Johns. 407. This view of the case of *Putney* v. *Dummerston* affords some relief against its apparent injustice, and it ceases to be an authority against the maintenance of the present action; for it cannot be pretended, that the plaintiff town, in this case, has any remedy, unless it be that, which is now sought. It may be proper to remark, that the special order of justices for the return of a pauper, after a reversal of an original order of removal, if it could have been used here, has been superseded by an express provision in the Revised Statutes, giving a remedy to the injured' town by action at law. Rev. St., ch. 16, sec. 10.

On the whole, we do not perceive, in previously adjudged cases, any insuperable obstacle in the way of applying the ordinary principles of law to the injury inflicted on the plaintiffs by the defendants, by allowing a compensation to be recovered for it. Because the liability of towns for the support of their own poor is regulated by statute, and cannot be directly enforced against them but in the cases and in the manner pointed out by statute, it does not follow, that they may, by fraud, or force, or by other culpable misconduct, divest themselves of the burden, which the law has thus imposed on them, and cast it with impunity upon others. They' should be held to the observance of the same course of honesty and fair dealing in the management of their paupers, that would be required of them in regard to any other matter; and we do not perceive, why a town should be excused for a misfeasance, or nonfeasance, which would otherwise render it liable to an action, because the instrument of its misconduct happened to be a pauper.

The judgment of the county court is therefore affirmed.