STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re: Dufault Variance Application | } | Docket No. 287-12-07 Vtec |
| (Appeal of Dufault) | } |  |
|  | } |  |

Decision and Order on Motion for Summary Judgment

Appellants André and Madeline Dufault appealed from a second decision of the Development Review Board (DRB) of the Town of St. Albans, issued after remand, denying Appellants' variance application. Appellants are represented by Michael S. Gawne, Esq., and the Town of St. Albans is represented by David A. Barra, Esq.

Procedural History

The original written decision issued by the DRB in May of 2007 on the original application made five statements labeled as "findings of fact" which did not actually contain any factual findings. Rather they were conclusory statements that generally tracked the five requirements of the state variance statute. 24 V.S.A. § 4469. In Docket No. 129-6-07 Vtec, Appellants argued that, because the decision denying the application did not contain a statement of the factual bases for the decision, the deemed approval remedy should operate to grant them the requested variance. The Court concluded that Appellants were not entitled to deemed approval, but determined that the decision was deficient under 24 V.S.A. 4464(b)(1) and granted the Town's request to remand the matter to the DRB for it to make factual findings for its decision. In re: Dufault Variance Application, Docket No. 129-6-07 Vtec (Vt. Envtl. Ct., October 24, 2007).

The Court's 2007 decision specifically did not require the DRB to hold a new hearing or to vote again on the application; rather, it stated that "[i]t will be up to the DRB in the

1

first instance whether to reopen the hearing or whether simply to make findings and conclusions based on the evidence taken at the original hearing." Id., slip op. at 4.

Motion for Summary Judgment

In the present appeal, Appellants have moved for summary judgment on Question 1 of the Statement of Questions: whether Appellants' variance application was deemed approved under 24 V.S.A. § 4464(b)(1), due to the DRB's failure to make a decision within forty-five days from the date of the remand. The following facts are undisputed unless otherwise noted.

Appellants occupy property[1] at 154 Shantee Point Road in the Lakeshore zoning district of the Town of St. Albans. This property, among others, was the subject of extensive litigation in this Court (as well as in Superior Court) that resulted in the relocation of a roadway running past Appellants' house and garage. See Appeal of Dana, Docket No. 66-4-03 Vtec (Vt. Envtl. Ct. Oct. 18, 2004).

In early 2007, Appellants applied to the DRB for a variance from the required side

---

1 From the minutes of the December 20, 2007 DRB hearing, at pages 15–16, it appears that material facts are in dispute in the present case as to the nature of the ownership and the locations of the lot lines, if any, of the subject property. Attorney Gawne's and Mr. Dufault's statements at the hearing, taken together, suggest that the lots had formerly been leased lots, that the underlying land had been purchased by Mr. Dufault and his neighbors in 1988, that the property is held in condominium ownership or some other form of common ownership, and that at the time of Mr. Dufault's application for the garage in its existing location in 1982, the application showed the present location of the garage as being 30 feet from the side line. Depending on the zoning ordinance in effect in 1982 or 1988, if no interior lot lines exist and no subdivision permit was required, it may be necessary for the merits of this appeal to determine whether the group of houses became a nonconforming PUD or other nonconformity under those earlier ordinances, or at the time of adoption the 2006 zoning ordinance or any intervening zoning ordinance, and, due to that status, whether the proposal at issue in the present case requires a variance at all.

2

yard setback to allow them to move their existing garage two feet closer to the existing house, to turn its orientation to face the new location of the road serving the property, and to construct a roofed breezeway[2] apparently attaching the two structures. Neither an application nor a sketch plan has been provided in connection with the motions in the present case or in connection with the earlier appeal, Docket No. 129-6-07 Vtec. Without the site plan, it is not possible for the Court to determine to what extent the existing property contains any nonconformities (see footnote 1, above) or requires a variance under § 321 of the Zoning Bylaws. It appears from the Chair's statement at the outset of the minutes of the December 20, 2007 hearing that the variance was requested under § 305(4).

From the minutes of the December 20, 2007 DRB hearing, at page 17, it appears that the site plan may have shown interior lot lines even if the property is held in common ownership, that the existing garage is located seventeen feet from such a side line, and there are twelve feet between the existing garage and the house. If so, the existing garage is therefore conforming as to the side setback for a detached garage considered as an accessory building. Section 315(3) provides a side setback of 15 feet for an accessory structure and 25 feet for the principal structure. The DRB treated the construction of the connecting breezeway as transforming the existing garage (or the relocated garage) from an existing or conforming accessory structure (with an allowed 15-foot setback) to a portion of the principal structure (requiring a 25-foot setback), that is, as creating a nonconformity where none had existed prior to the application.

---

2    Aside from the issues discussed in footnote 1 above, under § 321(4), even a nonconforming structure may be replaced in its exact footprint without obtaining a variance. The Court cannot determine from the December 20, 2007 minutes whether the proposal before the DRB included the alternative of changing the garage's orientation on its the exact footprint, so that the only issue was the proposed breezeway, that is, whether the DRB considered the rotation of the garage and the construction of the breezeway before it as separate projects.

The Court issued its remand decision on October 24, 2007. On October 26, 2007, Appellants' attorney sent a letter to the Town's attorney requesting that the DRB "schedule the action on the Dufault Variance Application as soon as possible." Due to the deadline for taking an appeal to the Vermont Supreme Court[3] from this Court's decision in Docket No. 129-7-07 Vtec, the letter went on to request: "[i]deally, we would like to have the hearing and the decision no later than November 22, 2007, so that the Dufaults could take a timely appeal . . . ." (This Court subsequently extended the time for that appeal by the maximum allowable thirty days, expiring on December 23, 2007.)

On November 29, 2007, Appellants' attorney sent another letter to the Town's attorney, stating that the Zoning Administrator had informed him by letter that the "remanded hearing before the [DRB] will be scheduled for January 10, 2008," and requesting that a special hearing be scheduled instead, so that the DRB decision could be announced by December 20, 2007, again to avoid an unnecessary appeal. The letter also stated as follows with regard to the need for notifying abutting landowners:

> . . . the remand was for the stated purpose of reconsideration of the decision of the DRB. Therefore, I don't think anyone was anticipating there would be new evidence or additional argument, just a decision granting or denying the application with adequate findings of fact. If so, an additional hearing would be unnecessary, and notice would not need to be given.

The letter went on to state that even if notice were required "for the adjudicative portion of the process," the Town should be responsible for giving any required notice as the remand was due to the Town, and stated parenthetically at the end that:

> [i]f the Board is anticipating new evidence and argument, I would probably only submit a copy of the [DRB]'s subsequent decision granting a variance to

---

3 That appeal was filed, but was dismissed without prejudice by the Supreme Court, Docket No. 2007-488, as prematurely filed.

4

[another applicant] for the construction of a garage, but I would intend to provide additional argument.

Although the DRB hearing on the application remained scheduled for January 10, 2008, the DRB in fact added Appellants' remanded application to the agenda for its December 20, 2007 hearing, and conducted the proceedings on Appellant's remanded application on that date. The parties have not provided the Court with the warned notice for the December 20, 2007 proceedings. In his introductory remarks at that hearing, the DRB Chair stated that "[t]hey just want us to hear the same thing" and described the application as the "[r]emanded and renewed application of Andre [and] Madeline Dufault requesting side yard variances to construct a breezeway and move a garage, in accordance with Sections 305(4) and 315(3) of the [Zoning Bylaws]."

The DRB chair inquired of Appellants' attorney whether the application remained the same, and whether Appellants would be presenting any new evidence. Although Appellant's attorney objected to the taking of new evidence, and although the DRB may not have understood that taking new testimony from Mr. Dufault about the same application constituted the taking of new evidence, even though no new documents were presented, new evidence was taken at the hearing, as follows.

The DRB inquired and Mr. Dufault testified about the history of when and whether Appellants created the interior lot line in 1988, making the existing garage seventeen feet from that line, rather than the thirty feet shown in the 1982 application for that garage, and testified about the extension of that interior lot line towards the road. Mr. Dufault testified regarding the common ownership of his and his neighbors' property. In addition, Mr. Dufault testified as to the reasons that he and his family wished to build the breezeway, including the difficulty of traversing the path between the house and the garage in the winter, and responded to the DRB members' questions relating to whether a complying

garage could instead be built adjacent to or with a shorter connector to the existing house, or closer to the road, away from the lake. The DRB also accepted evidence about the facts of an application granted for another applicant in June of 2007, as well as argument from Appellant's attorney regarding that decision's inconsistency with the DRB's treatment of Appellants' application.

The DRB voted the same evening to deny Appellants' variance application, and set forth its findings and reasoning in the minutes, which were approved or signed on December 26, 2007.

Appellants argue that the DRB failed to comply with 24 V.S.A. § 4464(b)(1) because the new DRB decision was made more than forty-five days from the date of the remand order, and that the deemed approval remedy should operate to grant them the requested variance.

Section 4464(b)(1) provides that the DRB shall "issue a decision within 45 days after the adjournment of the hearing, and failure of the [DRB] to issue a decision within this period shall be deemed approval and shall be effective on the 46th day."

By its terms, § 4464(b)(1) governs the time a DRB has to produce its decision, after the closure of the evidence and the adjournment of the hearing. By contrast, nothing in the state statute governs the time within which a DRB must hold or schedule its hearing after an application has been filed or a matter has been remanded. The deemed approval remedy is solely aimed at the time period between taking evidence and argument at the hearing, on the one hand, and the DRB's rendering its decision and reducing it to writing, on the other. The purpose of the deemed approval remedy is "to remedy indecision and protracted deliberations on the part of zoning boards . . . ." In re Appeal of Ashline, 2003 VT 30, ¶ 13, 175 Vt. 203, 209 (quoting In re Fish, 150 Vt. 462, 464 (1998)).

Once the hearing has been held and the evidence has been closed, if a DRB then

6

carries on its deliberations at subsequent hearings, those deliberative sessions will not prevent deemed approval if the DRB fails to render a decision within the forty-five days after the closure of the evidence. In re Appeal of McEwing Services, LLC., 2004 VT 53, ¶ 16, 177 Vt. 38, 44. In the present case, the DRB held a single hearing after remand, and made its decision on the same day. It chose not to issue a separate written decision, but to allow the minutes to constitute the written decision containing the factual basis for its decision and its conclusions relating to the review standards as provided in § 4464(b)(1).

If the DRB had not in fact scheduled any new hearing on the application, but had only proceeded to draft and adopt a proper written decision, with findings and conclusions, based on the evidence and vote taken at the original hearing, the Court would consider the argument that the forty-five-day deemed-approval period under 24 V.S.A. § 4464(b)(1) should have been counted from the date of the remand order, so that the DRB would have had to issue its new written findings and conclusions by December 10, 2007.

However, the DRB did schedule a new hearing, at least in part at the request of Appellants' attorney, if not on the schedule requested by Appellants. The DRB heard the parties' arguments, and also in fact took new evidence at that hearing, over the objection of Appellants' attorney, even though the application did not change, and even though the DRB did not evince a clear understanding that new testimony about the same application constituted the taking of new evidence. The DRB hearing therefore was not only a deliberative session. As a timely decision was made, measured under § 4464(b)(1) from the date of the hearing to the decision that same night, or measured to the date of the written minutes a week later, deemed approval is not warranted.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment on Question 1 is DENIED. A telephone

7

conference has been set (see enclosed notice) to discuss a schedule for mediation as well as to determine what issues remain for trial and to schedule a trial date.

As all that was before the DRB was Appellants' request for a variance, only the application for a variance could be resolved at trial. If the parties wish to discuss whether a variance was required, or to discuss any alternative locations for the requested improvements, they should provide the Court and each other (in advance of the conference) with a reduced-size copy of the proposed site plan, and any other documents necessary for that discussion.

Done at Berlin, Vermont, this 4th day of August, 2008.

_____
       Merideth Wright
       Environmental Judge