STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Blood Deck | } | Docket No. 154-7-07 Vtec |
| (Appeal of Dann) | } | |
| | } | |

<u>Decision and Order on Motion for Summary Judgment</u>

Appellant Joyce Dann appealed from a decision of the Development Review Board (DRB) of the Town of Colchester regarding a deck on the property of Appellee Ernest Blood. Appellant is represented by Beth A. Danon, Esq.; Appellee is represented by Mark G. Hall, Esq. The Town of Colchester has not entered an appearance in this matter. The following facts are undisputed unless otherwise noted.

In July of 2006, Appellee purchased the house and 0.44-acre lot at 1101 Red Rock Road, in the Shoreland overlay zoning district; the underlying zoning district has not been provided to the Court in connection with the present motions. Appellant owns the adjoining 0.31-acre residential property to the east, at 1097 Red Rock Road. Both lots are located on the southeasterly side of a peninsula of land that extends southwesterly into Lake Champlain, so that the southeasterly side of each property faces the lake. Both lots slope downwards from the road to a cliff at the edge of the lake.

In connection with home insurance issues, Appellee undertook certain construction or repairs involving the existing decks or patios, stairs, landings, and retaining walls on the slope downward from the house towards the lake. The work included the construction of a four-foot-high fence along a forty-foot-long retaining wall that has an eight-foot drop-off; the rebuilding of four separate short outdoor stairways; the resurfacing with wood and addition of a three-foot-high railing to an L-shaped existing but deteriorated concrete patio-pad (the upper patio-deck) running along the southeasterly (lake) side of the house and

1

along a portion of the northeasterly side of the house; and the resurfacing with wood and replacement of a rusted metal fence with a three-foot-high railing on a 17′ x 15′ existing but deteriorated concrete patio-pad (the lower patio-deck). The upper patio-deck is connected to the lower patio-deck by a short stairway at the westerly corner of the lower patio-deck, closest to Appellee's house. The lower patio-deck also serves as a landing for a long set of existing stairs that extend from the lower patio-pad towards the lake.

All the work appears from the sketch plan to have been located within one hundred feet of the shoreline, that is, within the shoreline setback applicable to the Shoreland overlay zoning district. The easterly portion of the lower patio-pad is also located within the minimum required ten-foot side setback established for preexisting lots in § 2.05(J)(1) of the Zoning Regulations, and in fact extends nearly to Appellant's property line. Only the lower patio-deck construction is at issue in this appeal.

Appellant had not been living at her property in the fall of 2006; she had been living in Woodstock, Vermont and spending the winters in Mexico. Sometime during the late fall but before November 10, 2006, on a visit to her property, Appellant observed a carpenter putting up railings on the lower patio-deck adjacent to her property line, and that a wooden decking surface had already been installed. She asked the carpenter if Appellee had obtained a building permit for the lower patio-deck and was informed that he had not.

The Town of Colchester Director of Zoning and Planning, Ms. Brenda Green, serves as the Town's Zoning Administrator. The Planning and Zoning Department also has a Building Inspector, Mr. Gerald Kittle. Appellant's affidavit states that Appellant "then began calling the Town to determine whether or not a permit was necessary." Facts are in dispute, or at least have not been provided to the Court, as to which person within the Town's administration received Appellant's telephone calls or spoke with Appellant, or what information, if any, was conveyed from or to her before Appellant left Vermont for Mexico on November 10, 2006. Facts are in dispute, or at least have not been provided to

2

the Court, as to what arrangements Appellant made to receive mail related to her Colchester property while she was in Mexico. However, based on the reasoning of this decision with regard to the November 15, 2006 permit, these facts may not be material to the present case.

Upon realizing that the total cost of all the repairs would exceed $2,500[1], Appellee applied for a permit on November 13, 2006, covering all the construction listed above. The application form is entitled "Application for Zoning and Building Permit," and has signature lines for both the "Building Inspector or Life Safety Officer" and for the "Zoning Administrator." Permit #20352 was issued by the Zoning Administrator on November 15, 2006. It contains the following statement or permit condition next to the Zoning Administrator's signature: "[r]eplacement of existing – no increase in enroachments to setbacks."

Appellee received the required large "Z" sign from the Town, and posted the sign on his garage window visible from Red Rock Road for a period in excess of the fifteen days required by 24 V.S.A. §4449(b). The Zoning Administrator's affidavit states that the town also complied with 24 V.S.A. §4449(b), which requires posting of the permit in a public

---

[1] Appellee's affidavit refers to repairs in excess of $2,500 as triggering the requirement for a zoning permit, however, no such requirement is found in the excerpts from the Zoning Regulations provided to the Court in connection with the present motions. One of the e-mails from Appellee to Appellant provided in Exhibit 1 to Appellant's affidavit refers to "section 4-25 of the Code" as containing such a requirement. No section numbered "4-25" appears in the excerpts from the Zoning Regulations. Appellee's reference to "the Code" may instead be to some other town ordinance triggering the requirement for a building permit rather than a zoning permit. Appeals of zoning permit decisions must be made first to the DRB and then to this Court under 24 V.S.A. Chapter 117; building permits and their appeals are governed by 24 V.S.A. Chapter 83.

place, and also requires that the permit contain a "statement[2] of the period of time within which an appeal may be taken . . . ."  The time period to appeal the issuance of the permit to the DRB expired on November 30, 2006.

On December 6, 2006 Appellant e-mailed Appellee regarding the lower patio-deck, stating that "[i]t is not right that it does not respect the set back required by zoning," and that she knew "that there was existing cement but that does not mean that a wooden deck can be built with a new wooden railing."  Appellee responded by e-mail that evening that he had obtained a permit the only condition of which was that he not "increase the encroachments beyond the existing patio," and suggested that Appellant "call the zoning administrator, Brenda Green, who handled my permit" if Appellant had any further questions about the law.

The following morning, December 7, 2006, Appellant e-mailed Ms. Green, with a copy to Attorney Danon, again agreeing that the preexisting concrete pad or slab had been located within the setback, but stating that "a substantial deck with a railing to my property line . . . should not be considered repairs."  In that e-mail, Appellant did not ask to appeal the permit; rather, she stated her preference to "work it out in a reasonable way directly with" Appellee.

On December 13, 2006, Appellant wrote an e-mail from Mexico to the Building Inspector, referring to having been in touch with the Zoning Administrator and laying out the situation, stating that Appellant would call the Building Inspector on the following day. In that e-mail Appellant did not ask to appeal the permit.  That e-mail was treated as a complaint and given to the Building Inspector to investigate.

On December 14, 2006, the Building Inspector filled out a "Request for Action

---

2  The portions of the permit provided to the Court in connection with this motion do not on their face contain that statement.

4

Investigation Report," after inspecting the property and discussing the matter with Appellee and another neighbor. The report concluded that the "concrete foundation and concrete decks were existing [and] under new wooden decks with no further encroachment."

Based on that inspection report, on December 18, 2006, the Zoning Administrator wrote a letter of determination to Appellant, informing her that the Building Inspector had found "that there was an existing concrete patio and that [Appellee] constructed a wooden deck with rails over it with no further encroachment to the setbacks." Based on the inspection, the letter stated that the Zoning Administrator "find[s] that at this time, there is no evidence of any violations of local [o]rdinances." The letter informed Appellant that she had the right to appeal the determination letter to the DRB within fifteen days of the letter's date of December 18, 2006. Also on December 18, 2006, the Zoning Administrator sent an e-mail to Appellant (at the same e-mail address from which Appellant had written on December 6 to the Zoning Administrator), informing her of the determination, that she should receive the letter of determination "this week," and that she had the right to appeal the determination letter.

Appellant's affidavit states that she sent the Zoning Administrator "an e-mail letting her know that mail will not get to me in Mexico and that she should send her letter to my daughter, Jordan Dann," but also acknowledges that she cannot locate this e-mail. The Zoning Administrator also has no electronic or paper copy of this e-mail.

On January 17, 2007, Appellant e-mailed the Zoning Administrator, telling her in full: "I sent my daughter's address to you, but she has not received a letter. Please send it and I guess you could consider all my emails as a reply to date." The Zoning Administrator responded within fifteen minutes as follows: "I'm afraid it must have been deleted [as] Spam. Would you kindly send it again?"

On January 25, 2007, Appellant again e-mailed the Zoning Administrator, stating

5

that Appellant's daughter had just gotten the letter and had just read it to Appellant." The January 25, 2007 e-mail stated: "I guess my responses, as I said last time, need[] to constitute an appeal," and requested that the appeal form be scanned and e-mailed to her. The January 25, 2007 e-mail also stated "[s]ince we have been in touch and the letter was virtually just received, I think it is necessary to consider that I have appealed . . . ," and essentially asked for the fifteen-day appeal period to be disregarded. The Zoning Administrator forwarded the series of e-mails to Lisa Riddle, the Development Review Coordinator in the Planning and Zoning Department, and asked her to help Appellant out.

Appellant provided an undated and unsigned written appeal statement to the Town by e-mail and sent a paper copy by an unidentified person who was leaving Mexico for the United States. Facts are in dispute as to when either the e-mail or the couriered copy was sent, as no cover e-mail, dated cover letter, or courier or mailing receipt has been provided to the Court. The signed "Application for Appeal" form is dated as having been received on March 30, 2007.

Neither the Zoning Administrator, the DRB, or any other party to the DRB proceedings challenged the appeal to the DRB as untimely filed. Rather, it was treated as a timely appeal of the Zoning Administrator's December 18, 2006 determination letter, apparently based on the delayed date of the actual receipt by Appellant of that letter.

The DRB held its hearing on Appellant's appeal on June 13, 2007. The parties have not provided the warning of the June 13, 2007 hearing, or whether any earlier hearings were warned for this appeal, and have not provided the minutes of the June 13, 2007 hearing, except as they were excerpted in the June 27, 2007 written decision. Both Appellant and Appellee attended the hearing and provided testimony and other evidence; other witnesses also testified. On June 27, 2007, the DRB issued its written decision, finding that the November 15, 2006 permit "was issued in accordance with [§ 7.03(C)(5)] of the Zoning Regulations and there is no compelling reason to overturn the issuance of the

6

permit." Section 7.03(C)(5) allows as a permitted use, for properties within the Shoreland overlay district, and in accordance with the dimensional standards in Table A-2 of the Regulations, the "[e]nlargement of residential structures that does not increase the degree of encroachment within 100 feet of the mean water mark," that is, the setback from the shoreline."

The DRB concluded that "[c]onstruction of a deck and rails over an existing concrete patio did not increase the encroachment into the setback." It is apparent from the findings, as well as from the excepted minutes, that the DRB did not consider the issue under § 2.12 but only under § 7.03, and also that the provisions of the Zoning Regulations with respect to fences were not discussed.

The scope of the present appeal is governed by the scope of what was before the DRB. Based on the affidavits of the Zoning Administrator and Appellant, both the Town and Appellant performed all the notice and posting that was required by 24 V.S.A. § 4449(b) in relation to the November 15, 2006 issuance of the Zoning Permit. No notice or posting of the November 13, 2006 zoning permit application was required, nor is any actual notice to neighboring landowners required by the state statute or by any sections of the Zoning Regulations provided in connection with the pending motions. Compare 24 V.S.A. § 4449(b) with 24 V.S.A. § 4464 (required notice of development review applications filed with the DRB) and 10 V.S.A. § 6084 (required notice and posting of Act 250 applications).

Because no appeal was filed with the DRB from the November 15, 2006 issuance of the Zoning Permit, as of December 1, 2006 the November 2006 Zoning Permit became final and cannot now be challenged, either directly or indirectly, 24 V.S.A. § 4472(d), even if it was issued in error or <u>ultra</u> <u>vires</u>. <u>Levy v. Town of St. Albans Zoning Bd. of Adjustment</u>, 152 Vt. 139, 143 (1989); <u>In re Ashline</u>, 2003 VT 30, ¶¶ 10–11, 175 Vt. 203, 207–08; <u>In re</u>

<u>Appeal of Smith</u>, Docket No. 263-12-02 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 14, 2003), aff'd 2006 VT 33, 179 Vt. 636 (mem.) (appeal of zoning permit was out of time, DRB did address appeal of zoning administrator's letter declining to take enforcement action). All of Appellant's e-mails were sent after December 1, 2006, after the time for appeal had already expired. Moreover, none of them contained a request to file a late appeal, until the January 25, 2007 e-mails requesting to appeal the December 18, 2006 determination letter.

On the other hand, Appellant's appeal of the Zoning Administrator's December 18, 2006 determination letter was treated as timely by the DRB, apparently based on the date of Appellant's actual notice of it on January 25, 2007 and e-mail request to appeal it on January 27, 2006. No one contested its timeliness before the DRB, and the Court will treat it as having been timely filed with the DRB.

Material facts are in dispute, or at least have not been provided to the Court in the context of the present motions, as to the height of the former lower concrete patio-pad and the height and location of its former metal fencing, as compared to the volume of the setback area occupied by the new lower patio-deck. Nor does the Court have before it all of the Zoning Regulations relating to fences (as fences installed at the property boundaries must by definition be within the side setbacks); the Court has a portion of § 2.10 found on page 14 of the Zoning Regulations, but the section begins on an earlier page not provided in the parties' excerpts. Based only on the sections provided by the parties, it appears that a fence under six feet in height requires a permit, while a fence over six feet in height requires conditional use approval and must meet the accessory structure setback requirements for the zoning district, suggesting that a fence under six feet in height does not have to meet the accessory structure setbacks. § 2.10(B)(4)–(6).

Moreover, we note that in general zoning regulations do not restrict landowners from using the full extent of their property within the setbacks, that is, up to their boundary lines, for permitted uses in the district. The restrictions in the Zoning Regulations govern

8

the construction or maintenance of structures within the district. That is, Appellee would have been free to use the area of the lower patio-pad to carry on residential accessory uses, such as outdoor seating, in the area occupied by the lower patio-deck, regardless of the new construction.

Therefore, the only nonconformity at issue in the present case relates to structures within the side setback. The only remaining questions in the present case are whether Appellee has enlarged the nonconforming structure within the side setback area so as to trigger § 2.12(B), and whether or not the fence or railing is otherwise allowed to be constructed within the setback area within the property boundary. If § 2.12(B) applies and if the fence or railing is not otherwise authorized, then the Zoning Administrator's December 18, 2007 determination letter was incorrect, and the lower patio-deck construction should have been referred for a variance as an enlargement of the nonconforming structure, leaving the status of the lower patio-deck as a nonconforming structure approved by error of the zoning administrator. 24 V.S.A. § 4303(14); Regulations § 12.02, "Nonconforming Structure." As the lower patio-deck is allowed to remain in place due to the unappealed November 2006 Zoning Permit, it is not clear to the Court whether the parties wish to pursue this remaining issue regarding the Zoning Administrator's December 18, 2006 determination letter. We have scheduled a telephone conference at which the parties should be prepared to discuss how they wish to proceed.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Summary Judgment is Granted to Appellee in that the zoning permit became final without appeal as of December 1, 2006, and could not thereafter be challenged.

However, as discussed above, material facts are in dispute, or at least have not been provided to the Court, as to the Zoning Administrator's December 18, 2006 determination letter. The Zoning Regulations applicable to fences or railings within the setback have not

9

been provided to the Court. Material facts are in dispute as to whether the new decking or railings of the lower patio-deck occupy any more of the setback area than did the previous fence and the existing concrete patio, and therefore whether the application should have been referred to the DRB. Accordingly summary judgment is DENIED as to Question 2 of the statement of questions.

A telephone conference has been scheduled (see enclosed notice) to determine whether the parties wish to proceed with the remainder of the appeal, as a practical matter, in light of today's decision. A courtesy copy of this decision is also being sent to the attorney for the Town of Colchester so that the Town may determine whether it wishes to participate in the scheduled conference, given the issues discussed in this decision.

Done at Berlin, Vermont, this 31st day of July, 2008.


_____
Merideth Wright
Environmental Judge